**MOTION RELIEF FROM STAY**

**EXHIBIT A**

eFiled
7/20/2026 3:41:34 PM
Superior Court
of the District of Columbia

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| KIMBERLY LIN, *et al.*, | ) | Case No. 2018 CA 008454 B |
| | ) | |
| Plaintiffs, (Judgment Creditors) | ) | Judge Darlene Soltys |
| | ) | |
| v. | ) | Next Event: Status Conference |
| | ) | July 23, 2026 at 3:30 p.m. |
| KARMA HOME DESIGNS, LLC; and | ) | Remote Courtroom 516 |
| WANAMAKER GROUP, LLC, | ) | |
| | ) | |
| Defendants. (Judgment Debtors) | ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' JULY 13, 2026, OPPOSITION TO
PLAINTIFFS' MOTION FOR WRIT OF EXECUTION, TURNOVER ORDER,
ORDER TO SHOW CAUSE, AND ACCOUNTING ("MOTION")**

The Opposition's accusation that Plaintiffs sat on their rights dissolves against Defendants' own facts. The credits Defendants say Plaintiffs should be attaching have been created under a cancelled trade name. Defendants themselves cannot presently enforce them. The cash those credits produced between October 24, 2025, and February 18, 2026 — $327,653.07, Motion, Table III — was collected under invoices issued by Defendant Wanamaker Group using the Karma Construction Group trade name and then moved beyond easy reach. The cash created by each paid invoice is the res the October 24 Tunnage Order attached. It remains subject to the Court's reach regardless of which corporate hand or individual held or now holds it. Defendants have not accounted for where the money went, including whether any part reached KCG MD LLC or another person or affiliate. That failure is theirs to cure, not Plaintiffs' to absorb. Plaintiffs respectfully request that the Court grant their June 29, 2026, Motion by issuing an appropriate order or writ requiring the money to be paid to the Plaintiffs, or if necessary deposited into the Registry of the Court, and by issuing any further orders necessary to enforce the Tunnage and Soltys Orders including orders to show cause if necessary.

The following facts are established by Defendants' own filings and are not in dispute:

1

(1) Defendant Wanamaker Group issued the invoices reflected in the payment ledger filed as part of Table II to the Motion.

(2) Upon issuance, those invoices became receivables — the District customers' obligations to pay. This Court's Order of October 24, 2025 attached those receivables directly, by the Court itself, not by a writ delivered to the Marshal as in *Jack Development*.

(3) Wanamaker Group was the only live entity related to Defendants in the District that could issue the invoices and create the DC receivables the Court attached.

(4) Wanamaker Group's own ledger (Table II) records $327,653.07 in cash payments received from District customers on those invoices after October 24, 2025.

(5) From all the available evidence it is a reasonable inference from copies of some invoices eventually produced (but not until May 14, 2026), that the invoice numbers identified in the Table II ledger were issued under the trade name "Karma Construction Group" after September 1, 2024.

(6) The Karma Construction Group trade name expired in the District of Columbia on September 1, 2024 , and has not been re-registered in D. C. by any Karma related entity.

**A. Any Credits in D.C. Created by the Invoices Are Not Enforceable. Any Attempt by the Plaintiffs to Attach Such Credits Would Expose the Plaintiffs to Significant Liability Under D.C.'s Consumer Protection Laws.**

The Defendants in their July 10, 2026, Reply concerning their Motion for Extension of Time at page 4 assert that Wanamaker owns the trade name, Karma Construction Group. Exhibit A to that same Reply shows that the trade name registration was cancelled as of September 1, 2024. Wanamaker Group does not dispute creating invoices therefore in 2025 under that cancelled trade name. Accordingly, for any uncollected credits the Defendants say Plaintiffs are free now to attach, Wanamaker Group is barred from maintaining suits in the District to collect them. "No person carrying on, conducting, or transacting business under any trade name shall be entitled to maintain any suit in any of the courts of the District of Columbia until the person has properly completed the registration." D.C. Code § 47-2855.03(d). Serving writs of attachment on those customers would require Plaintiffs to represent to Defendants' D.C. customers that the credits to Karma represented by each invoice are enforceable, collectible credits by Karma. They are not since Karma cannot sue to enforce them. By attaching these credits the Defendants would expose Plaintiffs to liability under the

2

District's consumer debt-collection law[1] and Consumer Protection Statute. Plaintiffs have not neglected a collection opportunity; they have declined a trap.

B. **The Collected Proceeds Are the Subject of the Plaintiffs' Motion.**

The trade name statute preserves the validity of the contracts underlying the Defendants' invoices. D.C. Code § 47-2855.03(e). Whatever the enforceability of the credits against the customers, many customers *paid*, and the payments, $327,653.07 collected after the October 24 Order, came into some entity's hands — the Defendants will not say whose hands. The Court attached the receivables; when the invoices were collected, they were converted into cash proceeds, and the Court's attachment followed the proceeds. The Code speaks throughout of "the property attached *or its proceeds*." D.C. Code §§ 16-523, 16-554. Defendants did not extinguish the attachment by collecting; they changed the form of the attached asset from a receivable into cash that remains subject to the Court's reach. Because that cash is fungible and already in Defendants' hands, the remedy is not a sale — a point Defendants themselves confirm when they argue Section 16-550 cannot apply because money is "fungible" and cannot be "sold." Just so: fungible collected cash is reached by levy, turnover, or a fi.fa. writ to the Marshal.

*Jack Development v. Howard Eales, Inc.*, 388 A.2d 466 (D.C. 1978), held only that an unperfected pre-judgment attachment before judgment of *real property* — where the Marshal never completed the levy before the owner conveyed it — yielded to a good-faith purchaser who took before perfection. *Id.* at 468-69. Its operative rule is that the transferee takes property subject to the attachment. *Id.* at 468 n.3. Here, **this Court issued the attachment itself**, and served it on the issuer of the receivables, Wanamaker Group. Defendants assert the attachment was "not perfected" but never explain why a court-ordered attachment on credits, served on the party holding them, was defective.

---

[1] *See, for example,* D.C. Code § 28-3814(f) (prohibiting false representation of the character or legal status of a consumer debt in collection).

3

If Defendants mean to suggest that collections routed through the cancelled "Karma Construction Group" name somehow slipped free of the Court's writ, the suggestion answers itself: that would mean Defendants' own unauthorized, cancelled-trade-name billing defeated the Court's attachment. Stripped to its essence, Defendants' position is that the proceeds are gone — that, as in *Jack Development*, it is simply "too bad" for Plaintiffs. But a judgment debtor cannot escape a judicial lien by thumbing its nose at the Court and collecting and then hiding the attached proceeds.

The Court attached these receivables to secure its judgment; it retains the power to make its attachment effective by reaching the cash each receivable became and redirecting that cash rather than leaving it wherever Defendants have chosen to move it. The "turnover" authorities Defendants cite (Opp. 6) do not bar this relief.[2] Separately, Defendants' own reporting failures confirm the violation the Motion addresses.[3]

The lien does not depend on where the money ends up. The October 24 Order attached the receivables when they were still invoices. The lien attached the res at that moment. The lien followed the res through every later transformation and transfer. It followed the invoices into cash. It follows that cash wherever Defendants sent it next. Defendants do not dispute this point directly; they dispute only whether the res was ever truly attached. Their "net receivables" gloss is the same argument in different clothing, and fails for the same reason.[4]

---

[2] Defendants' cited cases do not control. *Towers* is an eviction-moratorium stay order; *Price v. Williams* rests on a guardianship statute; *Cooks v. Fowler* governs disbursement from a fund already in the registry, not whether attachment proceeds may be deposited there. *Watkins v. Rives*, 125 F.2d 33, 36, 39–40 (D.C. Cir. 1941), supports turnover: a court may order a party already before it, as Wanamaker Group is, to deliver property or its proceeds, on pain of contempt.

[3] The May 14 payment ledger, moreover, does not comply with the production requirements of the Tunnage Order (reinforced by the Soltys Order), which required an accounting of receivables from August 7 to October 24, 2025; monthly reports of receivables *generated* each month; each outstanding receivable by customer name and address; and copies of the underlying invoices. A QuickBooks ledger of payments received supplies none of this, was not filed monthly, and was filed once, nearly seven months late. Plaintiffs preserve this as a separate, continuing violation.

[4] Defendants' suggestion that "receivables" means only "net" receivables (Opp. ¶ 2 and n.4) has no basis in the Orders, which attached "all receivables" from District customers; "net" appears nowhere. The gloss would let a judgment debtor define the attachment out of existence by deducting its own spending. Its premise — that Defendants could pay costs and selectively chosen vendors first, out of attached proceeds, and account only for the residue — concedes the violation, since Defendants were bound to weigh this Court's judgment among the alleged obligations paid from those funds.

This is why Defendants' accounting failure, ordered by Judge Tunnage, matters. Defendants refuse to say where each payment landed, where it went, or for what it was used. The paid invoices (Motion, Table II) were billed under the trade name "Karma Construction Group." Table IV shows a Karma Construction Group code linked to an entity styled KCG MD LLC — an entity Defendants do not address anywhere in their Opposition — after the payment ledger was issued.

A judgment debtor cannot defeat a court's lien by hiding liened proceeds or moving them to an affiliate. *Watkins* confirms a court's turnover power runs most directly against a party already before it, 125 F.2d at 36, but the Court need not resolve now whether the ultimate recipient is a corporate or individual alter ego. It need only order each res, or its traceable proceeds, returned; the accounting will show where to look next.

C. **The Remaining Objections Do Not Defeat the Motion.**

Section 16-518 applies. Defendants say it cannot apply because "there is no action pending." Opp. 6. This post-judgment enforcement proceeding is part of the same action — No. 2018 CA 008454 B — that produced the judgment and the attachment Orders; the attached property remains before the Court in that action. Defendants cite no authority that a court loses power over attached property upon entry of judgment.

*Kayode* does not bar the relief. *Kayode v. Midas Construction, LLC*, 312 A.3d 1229 (D.C. 2024), bars contempt to enforce a *money judgment*. Plaintiffs seek contempt, if at all, only to enforce the this Court's commands to account, report, and not transfer — orders to perform specific acts under Rule 70, which *Kayode* recognizes "have historically been enforceable via the court's civil contempt powers." *Id.* at 1234. The request is conditional, arising only if execution against the corporate Defendants fails for want of assets.

Service on Mr. Javier is premature, not defective: the show-cause relief against him is conditional, and personal service is proper once the Court issues that conditional Order.

Respectfully submitted,

/s/ Thomas A. Mauro
Thomas A. Mauro, Bar No. 184515
Mauro Law Offices, P.C.
700 Pennsylvania Avenue, S.E., Suite 200
Washington, D.C. 20003
(202) 452-9865
tmauro@tmaurolaw.com
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on July 20, 2026, a copy of the foregoing Plaintiffs' Reply to Defendants' July 13, 2026, Opposition to Plaintiffs' Motion for Writ of Execution, Turnover Order, Order to Show Cause, and Accounting ("Motion") was served electronically via the Court's e-filing system upon all counsel of record.

/s/ Thomas A. Mauro
Thomas A. Mauro

6